Filed 11/3/21  R.Z. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R.Z., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F083214 <br><br> (Super. Ct. Nos. 21CEJ300140-2, 21CEJ300140-3) <br><br><br> **OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Kimberly J. Nystrom-Geist, Judge.

R.Z., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Lisa R. Flores, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Detjen, J. and Snauffer, J.

R.Z. (mother), in propria persona, seeks an extraordinary writ from the juvenile court's dispositional orders denying her reunification services (Welf. & Inst. Code, § 361.5, subd. (b)(5) & (6))[1] and setting a section 366.26 hearing on December 14, 2021, as to her now two-year-old son, M.Z., and one-year-old daughter, J.Z., based on its finding J.Z. suffered severe physical abuse while in her care. She contends the juvenile court erred in relying strictly upon medical information to determine the injuries were nonaccidental instead of conducting a further investigation. She also contends the court erred in not placing the children with a relative. We conclude mother's petition fails to comport with the procedural requirements of California Rules of Court, rule 8.452[2] regarding extraordinary writ petitions and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Dependency proceedings were initiated on April 19, 2021, after then seven-month-old J.Z. (the baby) was transported by ambulance to the emergency room to be treated for an altered mental state after she was injured at home. She sustained bilateral subdural hematomas, a left subdural hemorrhage, and retinal hemorrhages in both eyes. Because her condition was life-threatening, the doctors performed an emergency craniotomy to evacuate the right subdural hematoma. She was admitted to the pediatric intensive care unit.

Mother and the baby's father, S.I. (father),[3] lived with their two children, the baby, then two-year-old M.Z., and mother's sons from two other relationships, 12-year-old Jonathan, 10-year-old Luis and nine-year-old Alexander. Mother was the only caregiver for the children. According to mother, the baby was asleep on the couch. Luis was sitting next to the baby watching over her. Alexander's teacher came to the house to give

---

[1]  Statutory references are to the Welfare and Institutions Code.

[2]  Rule references are to the California Rules of Court.

[3]  Father did not file a writ petition.

2.

him a certificate and other school materials. While mother was attending to the teacher, Luis stepped away from the couch and the baby fell off. Mother did not see the baby fall but heard her crying. Mother later stated the baby was awake and sitting on the couch when Luis stepped away.

Luis stated he did not see the baby fall. He picked her up and mother told him to get some rubbing alcohol and told him to call emergency services because the baby was falling asleep. He spoke to an operator who told him to give the phone to mother. Jonathan was not present. Alexander said the baby was on the couch with Luis and fell off the arm of the couch. All three boys denied being physically punished, stating their parents punished them by taking away their electronic devices. Father stated he arrived home from work to find mother on the phone with emergency services.

The police officer who responded to the scene said the couch from which the baby fell was approximately two feet high. The floor below was carpeted and covered with a decorative carpet. The fire captain who responded was a retired doctor. He found the baby unconscious and tended to her medically while waiting for the emergency medical technicians. Asked whether he believed the baby could have sustained her injuries from a fall from the couch, the police officer said it did not sound consistent with what he observed.

The attending physician determined the baby's injuries were not consistent with an accidental fall from a couch but more consistent with shaken baby syndrome.

Law enforcement placed a protective hold on the children and the Fresno County Department of Social Services (department) placed Jonathan and M.Z. in foster care. The baby remained hospitalized, and Alexander and Luis were released to their father's custody.

The maternal aunt asked to be considered for placement and the social worker submitted rapid placement paperwork on behalf of the maternal grandmother.

3.

On April 19, 2021, a public health nurse informed the department the baby remained sedated and comatose and had significant retinal hemorrhages in each eye with the right eye having greater involvement. That same day, the department conducted a team decision meeting (TDM) with the parents, the maternal aunt, and the maternal grandmother. The social workers explained the baby's injuries were consistent with shaken baby syndrome, rather than an accidental fall, and informed them M.Z. had a healing bruise that was consistent with a belt mark. Mother denied using physical discipline. The parents denied that anyone would intentionally harm the baby and father had no concerns about how mother cared for the children. He believed the baby accidentally fell from the couch. The social workers decided to file a dependency petition and continue their efforts to locate Jonathan's father in Mexico.

The department filed a dependency petition alleging Jonathan, M.Z. and the baby came within the juvenile court's dependency jurisdiction under section 300, subdivisions (a) (serious physical harm) and (b)(1) (failure to protect) because of the injuries the baby sustained and because M.Z. had bruising consistent with a belt mark. Additionally, it alleged the baby was described under subdivision (e) (severe physical abuse).[4] The department recommended the court detain the children and advised the court it would assess the parents for reunification services.

On April 20, 2021, the juvenile court ordered the children detained, ordered reasonable supervised visitation, and set the jurisdictional/dispositional hearing for June 1, 2021.

On April 28, 2021, the department filed an amended petition, adding allegations under section 300, subdivision (i) (cruelty) that the baby was subjected to severe and extreme acts of cruelty by the parents who either committed the acts or knew or

---

[4]     The original petition also alleged Jonathan was described under section 300, subdivision (g) (no provision for support) because the whereabouts of his father were unknown. The allegation was subsequently withdrawn.

reasonably should have known the baby was in danger of being subjected to an act or acts of cruelty.

On June 1, 2021, the juvenile court detained the children on the first amended petition, and set a contested jurisdictional/dispositional hearing (combined hearing) for August 16, 2021.

In its report for the combined hearing, the department informed the juvenile court that the parents had no history of child welfare intervention or criminal history. They denied any drug or alcohol abuse or engaging in domestic violence. The maternal grandmother's application for placement was submitted on April 16, 2021, and was awaiting approval at the time of the department's report. On May 7, the baby was discharged from the hospital and placed with M.Z. in foster care.

The department recommended the juvenile court sustain the allegations and deny the parents reunification services under section 361.5, subdivision (b)(5) and (6). Section 361.5, subdivision (b)(5) authorizes the denial of reunification services when the court finds, by clear and convincing evidence, that the child was brought within the jurisdiction of the court under subdivision (e) of section 300 because of the conduct of the parent. Section 361.5, subdivision (b)(6) authorizes the denial of services when the child has been adjudicated a dependent pursuant to any subdivision of section 300 as a result of severe physical harm to the child by a parent and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent.

By the combined hearing on August 16, 2021, Jonathan had been placed with a maternal aunt. The parents appeared at the hearing and testified with the assistance of a Spanish language interpreter. Mother maintained the baby fell from the couch while Luis was watching her. Asked whether she believed the only way the baby was injured was by falling, mother said maybe Luis shook the baby too much while playing with her. She had noticed Luis rock the baby roughly. The baby was fine before the fall and mother did

5.

not see anyone else shake the baby. She denied that she, Jonathan, or father shook the baby. She disciplined the children, including two-year-old M.Z., by disconnecting the internet.

Father testified the baby was sleeping when he left for work that morning. He believed the baby fell from the couch and that mother did not hurt her.

Robert Brewer, an emergency response social worker, testified M.Z.'s caregiver contacted the department before the TDM on April 19, 2021, to report he had a mark located somewhere under his normal clothing. Brewer personally looked at the mark and based on his professional experience observing bruising on children, he concluded the bruise on M.Z. was consistent with a belt mark. The mark was three-fourths of an inch across and a couple of inches long. It was still red and discolored as if it had been there a few days. He questioned both parents at the TDM. They denied that M.Z. had any marks or bruises on him and denied hitting him. The older children denied the parents physically disciplined them and expressed no fear of their parents. As for his conclusion the couch was not tall enough to cause the baby's injuries, Brewer relied on the child advocacy doctor who stated it was impossible for the baby to receive her injuries from a fall from the couch.

Nancy Simon, a family reunification social worker, testified father had not offered any explanation for the baby's injuries other than the fall from the couch. She did not ask father for proof that he was at work when the incident occurred. She did not believe father could protect the children.

The juvenile court sustained the allegations, denied the parents reunification services as recommended and set a section 366.26 hearing. In ruling, the court stated it "did not find either parent to be believable … on all crucial issues." The court placed Jonathan in the custody of his father.

## DISCUSSION

Mother contends the juvenile court's ruling was error because it was based on the doctor's statement without further investigation. She asserts there were other witnesses present when the baby was injured who could have been interviewed. She also faults the department and the court for not placing the children with relatives while her case was pending. She seeks an extraordinary writ directing the juvenile court to return the children to her custody or provide reunification services. We conclude mother's petition fails to comport with the content requirements of an extraordinary writ petition and dismiss it as facially inadequate.

The purpose of extraordinary writ proceedings is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing. (§ 366.26, subd. (*l*)(4).)

Rule 8.452, which sets forth the content requirements for an extraordinary writ petition, requires the petitioner to identify the error(s) he or she believes the juvenile court made and to support each alleged error with argument, citation to legal authority, and citation to the appellate record. (Rule 8.452(b).) In keeping with rule 8.452(a)(1), we will liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law. Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record. Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Mother in essence claims the doctor's opinion the baby was shaken was insufficient to find the baby suffered severe physical harm and that mother was responsible. She does not, however, explain using legal authority that a medical opinion is insufficient to support a jurisdictional finding.

7.

The juvenile court is entitled to rely on expert opinion. Here, the medical records document that the baby was severely injured and that her injuries without surgical intervention were potentially fatal. The child advocacy physician opined that the baby could not have been injured from a short fall from a couch as mother stated but rather was shaken. The medical evidence was uncontroverted and sufficient for the court to sustain the first amended petition and adjudge the children dependents.

Further, the department did not rely solely on medical information in assessing the case; the department also interviewed Alexander and Luis, who were also present in the home when the injury occurred, and father. None of them could provide any information that would medically explain the baby's injuries. There is no evidence anyone else was present and a witness to the baby's injury and mother does not identify any other witnesses in her writ petition.

Finally, mother fails to explain legally that the department's failure to place the children with a relative by the combined hearing was error. According to the record, the department was in the process of approving a relative for placement and the decision was pending.

We conclude mother's failure to articulate specific claims of judicial error with citation to legal authority and the appellate record render her writ petition facially inadequate for appellate review. Further, as a reviewing court, we do not independently review the appellate record for possible errors. (*In re Sade C*., *supra*, 13 Cal.4th at p. 994.) Therefore, we dismiss the petition.

## DISPOSITION

The petition for extraordinary writ is dismissed as inadequate under rule 8.452. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).

8.